*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. R. PRITCHETT, JR., Minor.

UNPUBLISHED
February 10, 2026
2:43 PM

No.   372797
Wayne Circuit Court
Family Division
LC No.   2008-483184-NA

Before:  TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Respondent-father appeals the trial court's order terminating his parental rights to his minor child, TRP, challenging the statutory grounds supporting termination and the trial court's best-interests conclusion.  We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2019, M. Brown gave birth to respondent's son, TRP.  Both tested positive for cocaine, and TRP was briefly admitted to the neonatal intensive care unit.  That prompted an investigation by Children's Protective Services (CPS) that ultimately led to the termination of respondent's parental rights.

During the CPS investigation, respondent admitted to substance-abuse issues and a lack of suitable housing.  Investigators also discovered that Brown lacked suitable housing, had a long substance abuse history, and previously had her parental rights to another child involuntarily terminated.  So, CPS established a safety plan that placed TRP in the care of a maternal great-aunt following his discharge from the hospital.

Petitioner, the Department of Health and Human Services (DHHS), then petitioned the court to take jurisdiction over TRP, and with respect to respondent, make TRP a temporary ward of the court.  It also requested that the court terminate Brown's parental rights to TRP and his half-brother.  The trial court authorized the petition, formally removed TRP from his parents' care, and granted respondent supervised parenting time.  TRP remained in the great-aunt's care until her

-1-

death in June 2021, at which time DHHS moved TRP to the home of another maternal great-aunt. TRP would remain in this placement for the duration of the case.

Meanwhile, respondent's case proceeded through adjudication and disposition. During the adjudication phase, respondent was awaiting trial on retail fraud and stolen credit card charges. The trial court ultimately assumed jurisdiction over TRP and ordered respondent to comply with a treatment plan designed to address, among other things, parenting skills, substance-abuse issues, and mental-health concerns.

Respondent struggled to comply with these conditions, making little to no progress with his treatment plan while being in and out of jail, a shelter, and an inpatient substance-abuse program. He was also hospitalized in a psychiatric facility after refusing to take his prescribed medications. And while in jail, respondent's caseworker attempted to communicate with respondent through the jail e-mail system to no avail.

The trial court eventually ordered DHHS to file a permanent custody petition, and the trial court commenced the scheduling of a termination hearing. It took approximately 18 months before the court held the termination hearing. The matter was adjourned for a multitude of reasons, one of which was respondent's sentencing hearing for retail fraud, for which he was eventually sentenced to 46-months to 46-years' imprisonment. The termination hearing was also delayed because of respondent's relocation within the penal system and technological issues at the Oakland County Jail; additional time needed to consider the implications of respondent's sentence; and the failure of respondent's appointed counsel to appear at the scheduled hearing.

After testimony from a foster-care supervisor and TRP's paternal grandmother, the referee recommended termination of respondent's parental rights and found that doing so was in TRP's best interests. The trial court adopted the referee's recommendations and entered an order terminating respondent's parental rights. Respondent appeals as of right.

## II. STATUTORY GROUNDS

Respondent first challenges the trial court's findings that the statutory grounds for termination were established by clear and convincing evidence. To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard, which occurs if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

Only one statutory ground must be established to support termination of parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The trial court here found six grounds supporting termination. Because there was no clear error in terminating respondent's parental rights, independently, under MCL 712A.19b(3)(c)(*i*) and (j), we do not address whether §§ 19b(3)(a)(*ii*) (desertion), (c)(*ii*) (failure to rectify other conditions leading to court's jurisdiction), (g) (failure to provide proper care or custody despite financial capacity), and (h) (imprisonment depriving child of normal home for more than two years) also supported termination.

## A. NO REASONABLE LIKELIHOOD THAT CONDITIONS LEADING TO ADJUDICATION WILL BE RECTIFIED

Termination of parental rights under § 19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" a finding that the parent has not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). DHHS met this evidentiary burden by clear and convincing evidence.

TRP came to the attention of CPS because, at the time of his birth, both he and his mother tested positive for cocaine. The conditions that led to adjudication relative to respondent were his admitted substance-abuse issues, lack of suitable housing, and unavailability to care for his son when it became apparent that the newborn child could not leave the hospital in Brown's care.

At the February 2021 dispositional hearing, the trial court ordered respondent to comply with a treatment plan designed to remove the barriers to reunification. Specifically, the trial court ordered respondent to participate in a psychological evaluation and a substance-abuse assessment and comply with any ensuing recommendations; to participate in individual counseling, parenting classes, parenting time, and court hearings; and to obtain and maintain suitable housing and a legal source of income. Because there was some suggestion that respondent might have cognitive delays, the trial court ordered that DHHS refer respondent to parenting services that accommodated parents with cognitive issues.

During the years that TRP was a ward of the court, respondent did not comply with the court's orders. Because respondent was consistently in and out of jail during the 12 months between adjudication and disposition, DHHS could not refer him for any services. DHHS, however, did offer respondent opportunities to spend time with his infant son. Before his incarceration in January 2022, for example, DHHS offered respondent eight face-to-face visits with TRP. Respondent only attended one visit in August 2020. Further, in the several years leading up to the termination hearing, respondent participated in only eight video visits. His caseworker also testified respondent missed other opportunities to similarly attend visits arranged by a family member because respondent lost his privileges.

When he was not incarcerated, respondent did not comply with his treatment plan. The record lacks evidence that respondent had appropriate parenting skills to parent his child or that he could provide a safe and suitable home for TRP. Similarly, there is no evidence that respondent had adequately addressed his substance-abuse issues or his mental-health concerns. Accordingly, there was clear and convincing evidence that 182 days elapsed since the issuance of the initial dispositional order, and respondent failed to rectify the conditions that led to the adjudication.

Moreover, there is also evidence from which the trial court could conclude that the conditions that brought TRP into care would not be rectified within a reasonable time. In addition to evidence that respondent failed to participate in services when he was at liberty, respondent ignored DHHS's effort to facilitate services during his incarceration. A caseworker reported that she attempted to communicate with respondent through the jail e-mail system, but he never responded. Moreover, in the 12 months following the adjudication, rather than participate in services, respondent engaged in criminal activity that resulted in his recurrent jailing. While this

Court understands the challenges facing respondent, his conduct suggested that he was unwilling or unable to make meaningful changes in his life to benefit his child.

Finally, when determining whether a parent would be able to rectify the conditions that led to adjudication within a reasonable time, a court is to focus on the time to rectify the barriers, as well as how long the child "could wait for this improvement." *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). In this case, TRP was 3½ years old at the time of the termination hearing, placed with relatives his entire life, and respondent's earliest release date was November 2025.[1] It is plausible that it would take at least several months after he was released from prison before respondent could demonstrate that he had overcome his substance-abuse issues, addressed his mental-health concerns, and obtained and maintained suitable housing and a legal source of income. Realistically, however, because respondent never provided care for his child when he was available to do so, there are no credible reasons to believe he would begin to do so after his release from prison. Moreover, respondent's past failure to meaningfully engage in a treatment plan indicates that services would be of little to no benefit to respondent in at least the near-term future. Considering that TRP had already been a court ward for 3½ years, expecting him to wait several more years for respondent to work on services would be unreasonable.

Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under § 19b(3)(c)(*i*).

## B. REASONABLE LIKELIHOOD CHILD WILL BE HARMED

A court may terminate parental rights under § 19b(3)(j) if it finds by clear and convincing evidence that there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Particularly applicable to the circumstances in this case, "it is proper to scrutinize the likelihood of harm if the child were returned to the parent's home *after* the parent's release from prison." *In re Pops*, 315 Mich Ap 590, 600; 890 NW2d 902 (2016). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that child will be harmed if returned to the parent's home." *Id*. at 711. Considering the same evidentiary record, the trial court properly terminated respondent's parental rights under § 19b(3)(j).

The best evidence available to predict respondent's actions after he is released from his incarceration is his conduct during the 3½ years TRP was in care. Respondent used that time to commit crimes, the consequences of which led to intermittent jailing for a couple of years. Then, in January 2022, respondent committed at least one felony that resulted in a court sentencing him to a minimum sentence of almost four years' incarceration. It is not permissible to assume, without more, that respondent's criminal history would place TRP in danger in the future.

---

[1] According to the Michigan Department of Corrections, his earliest release date is now November 24, 2027.

To be sure, the Supreme Court has cautioned that, absent exceptional circumstances, a parent's criminal history alone does not justify terminating parental rights. *In re Mason*, 486 Mich at 165. However, it is not simply respondent's criminal activity that would place TRP at risk of harm in the future. The record established that when respondent was not jailed or incarcerated, he failed to participate in services that could have addressed his substance-abuse and mental-health issues and improved his parenting skills. Respondent also did not take advantage, when he was not jailed or incarcerated, of available parenting time. Moreover, respondent failed to respond to the caseworker's efforts to keep him engaged during his incarceration. Considering the totality of the record, there is clear and convincing evidence from which the court could conclude that TRP would be harmed if returned to respondent's care after respondent was released from prison.

Resisting this conclusion, respondent argues that there is insufficient evidence that TRP would be harmed if placed in respondent's care after he is released from prison because respondent and TRP would be living in the home of TRP's paternal grandmother. Although she testified that she was willing to care for TRP under a guardianship until respondent was released from prison, the record is silent regarding respondent's plans for TRP after he was released from prison. Thus, it is speculative to conclude that TRP would be safe in respondent's care because they would be under the watchful eye of the paternal grandmother.

Considering the existing record, the trial court did not err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j).

## C. DEFENDANT'S INCARCERATION STATUS

Finally, respondent asserts that the court terminated his parental rights solely because of his incarceration. The fact of incarceration is insufficient on its own to support termination of parental rights. *In re Mason*, 486 Mich at 160. However, the record demonstrates respondent's incarceration was not the sole reason, or even the main reason, that the court terminated his parental rights. Indeed, the trial court stated that it was not terminating respondent's parental rights because of his incarceration.

To respondent's credit, the caseworker testified that respondent was incarcerated for 95 percent of the case. However, the trial court was free to—and did—reject this characterization of the events. Take the paternal grandmother's testimony. She testified that respondent got "locked-up" approximately two years after TRP's birth, explaining: "Okay. So he was in and out. Maybe one day, whatever, and he kept—got right back out." Other evidence also demonstrated respondent was not in custody for any extended period of time until he was arrested and jailed for his fraud charges. Based on this and other evidence, the trial court correctly found that that there existed clear and convincing evidence that respondent was given a treatment plan and, during the years TRP was in care, respondent had opportunity to participate in services but failed to do so.

## III. BEST INTERESTS

Respondent also argues that the trial court erred when it concluded that termination of his parental rights was in TRP's best interests. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that

termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). After reviewing the record, we find no error in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App at 713. These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being in care, and the possibility of adoption. *Id*. at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App at 131. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87.

The trial court did not clearly err when it found that termination of respondent's parental rights was in TRP's best interests. The trial court considered TRP's safety and well-being and found that this was a factor that weighed in favor of terminating respondent's parental rights. Because respondent did not participate in services designed to improve his parenting skills and address substance-abuse and mental-health issues, and instead, continued to engage in criminal conduct, there was more than a preponderance of the evidence that TRP would not be safe in respondent's care. Accordingly, the trial court reasonably found that the ability to keep TRP safe was a factor that weighed in favor of terminating respondent's parental rights.

Nor do we agree that the trial court improperly weighed the existence of a parent-child bond. TRP's paternal grandmother testified that she facilitated video visits between respondent and TRP during respondent's incarceration. She claimed that visits occurred twice a month since 2022, that a bond existed, and that TRP recognized respondent as his father. But the caseworker's testimony gave the trial court reason to not credit that testimony—the caseworker explained that there was "a large timeframe" that the video visits did not occur because respondent lost his privileges, and that in the 3½ years preceding the termination hearing, respondent participated in only eight video visits. In addition, before his extended incarceration, DHHS offered respondent eight face-to-face visits with TRP. Respondent only attended one visit in August 2020.

The time respondent spent in and out of jail impaired his ability to bond with his very young child. In general, the existence of a bond is a factor that would weigh in favor of preserving a respondent's parental rights. However, any bond that existed between respondent and TRP was minimal, and it did not outweigh the child's need for safety and stability. A preponderance of the evidence supported the trial court's finding that a minimal bond existed between respondent and TRP.

The trial court also appropriately considered TRP's need for permanence, stability, and finality and found that these factors weighed in favor of terminating respondent's parental rights. The trial court's findings were supported by a preponderance of the evidence. At the time of termination, TRP was 3½ year old and had lived with relatives for his entire life. At no time during these years did respondent demonstrate that he was capable of parenting his child. There were several relatives who had expressed an interest in adopting TRP, and termination of respondent's parental rights was the only avenue by which TRP could be available for adoption. The record amply supports the court's finding that termination of respondent's parental rights would give the TRP the stability, permanence, and finality he deserves.

Respondent also asserts that the trial court did not give appropriate weight to the fact that TRP was placed with a relative. We disagree. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). Further, relative placement is a factor the weighs against termination. *In re JMG/JGG/JMG*, 16 NW3d 82, 83 (Mich 2025). This is so because a relative caretaker may be open to allowing the parent to maintain a relationship with the child, and maintenance of that relationship may be in the child's best interest. *In re Mason*, 486 Mich at 168-169. However, while placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relative if it finds that termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

Here the trial court considered that TRP was placed with a relative. Nonetheless, it found that termination was still in TRP's best interests. Placement with a relative is only one factor to be considered when contemplating a child's best interests. The court weighed several factors and then appropriately found, by a preponderance of the evidence, that termination was in TRP's best interests despite the fact that he was placed with a relative.

Respondent asserts, however, that the court improperly found that TRP's relative placement was a factor that weighed in favor of terminating respondent's parental rights. This is not an accurate portrayal of the record. After the court issued its oral rulings, counsel for DHHS specifically asked if the court "also considered the relative placement factor." The court replied yes and then added:

> [T]here is a plethora of relatives willing to adopt the child, to take care of the child, and provide for the child long-term. And that being the case, yes, that's one of the reasons the Court has considered that it is in the child's best interest to terminate the parental rights.

This exchange demonstrates the court did not consider the relative placement as a factor weighing in favor of termination, and instead reflects consideration that there were parties willing to adopt and provide long term for TRP. See *In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021) (possibility of adoption is a factor that a court is permitted to weigh in favor of terminating parental rights). And the court also properly considered that his current placement—a placement where the caregiver was willing to adopt—was with his half siblings. See *In re Olive/Metts*, 297 Mich App at 41-42 (placement with a sibling is in the child's best interests).

Next, respondent claims the trial court erred when it failed to implement a guardianship with the paternal grandmother in lieu of termination. We cannot agree. From the outset, and at several hearings, both respondent and TRP's paternal grandmother requested that TRP be placed with his paternal grandmother. The court explained that it did not make specific placement decisions, that was in the purview of DHHS, and if the paternal grandmother wished a change of placement, she could seek redress with the Foster Care Review Board. She explained when testifying at the termination hearing that DHHS was not inclined to place TRP with her because TRP was already placed with a relative, at Brown's request, and two of TRP's siblings were also in this home.

Generally, a guardianship is appropriate if the trial court finds that a child cannot safely be reunified with their parent, but that termination of parental rights is not in a child's best interests. *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014). A guardianship "allows the child to keep a relationship with the parent when placement with the parent is not possible." *Id*. at 705. The appointment of a guardian is generally done in an effort to avoid termination of parental rights. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). Although a trial court may forgo termination of parental rights and instead place a child in a guardianship, a trial court is not required to establish a guardianship in lieu of termination of parental rights if it is not in the child's best interests to do so. *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6. Here the trial court considered the possibility of a guardianship but ultimately found that there were several relatives willing to adopt, that respondent could not provide stability and permanence, and that a guardianship would not provide TRP with the permanency and finality he required, and therefore did not err in declining to implement a guardianship.

In sum, the trial court did not clearly err when it found that termination of respondent's parental rights was in the child's best interests.

## IV. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace

-8-